for the second district is now open. The Honorable Justice Robert D. McLaren presiding, along with Justices Donald C. Hudson and Liam C. Brennan. The case is number 2-18-1040, People of the State of Illinois, Plaintiff-Appellee v. Gregory A. Rollins, Defendant-Appellant. Arguing for the Appellant, R. Christopher White. Arguing for the Appellee, David Friedland. Thank you. Mr. White, you may proceed. Thank you. Good morning. May it please the Court, Counsel Chris White from the Office of the State Appellate Defender on behalf of Gregory Rollins. Mr. Rollins' conviction for child photography by a sex offender must be vacated with a statute as both facially unconstitutional and unconstitutional as applied to him under the First and Fourteenth Amendments. Mr. Rollins was convicted of child photography by a sex offender, which states in relevant part that it is unlawful for a child sex offender to photograph, videotape, or take a digital image of a child without the consent of the parent or guardian. For taking a surreptitious, non-pornographic, non-obscene photograph of a teenage boy with his cell phone in a public place, Mr. Rollins was sentenced to a prison term of five years. The statute is overbroad because it criminalizes a wide range of otherwise protected expression available to other citizens. Specifically, the statute prescribes the First Amendment right to take non-obscene, non-pornographic photographs of children, which have been held to be protected by the First Amendment. The trial court here correctly determined that the statute was subject to strict scrutiny review because the photo in question was not content neutral and content-based regulations are presumptively invalid. To satisfy strict scrutiny review, a statute must be the least restrictive means of achieving a compelling state interest. Like the court in Oatman in Wisconsin, the circuit courts here recognize the undeniable compelling state interest in protecting children. And, of course, the protection of children is a legitimate interest. But that does not end the inquiry. The statute not only must achieve that state interest, but it must be the least restrictive means of doing so. Unlike the court below, the court in Oatman correctly concluded that the similar Wisconsin statute at issue does little, if anything, to further that interest. Indeed, the Oatman court found that the statute there might actually cause more harm than good by requiring sex offenders to approach a child and ask them questions about their parents in order to obtain their, in the case of Oatman, written consent. Although the statute here differs from that in Oatman because it requires a parent to give oral rather than written consent, that distinction does not narrowly tailor the restriction to any significant degree. The Illinois statute still mandates that one covered by the act must obtain parental permission. Thus, the concerns that the statute might do more harm than good, as expressed by the Oatman court, are neither eliminated nor even significantly reduced by this statute. More importantly, the statute here, like the Wisconsin statute, does little, if anything, to further the interest of protecting children. Nor does the statute here pass constitutional muster by limiting its application to child sex offenders, unlike Oatman. The connection to a compelling state interest here does not, excuse me, become stronger merely because the number of those who lose their First Amendment protections is reduced. Moreover, the elimination of an individual's expression rights based on status is precisely the First Amendment was ratified. Protections are not required to protect popular expression. It is unpopular expression or expression by those society deems unpopular that are most in need of protection. In Ashcroft versus Free Speech Coalition, the U.S. Supreme Court has concluded that children are not harmed by non-obscene, non-pornographic photographs that are taken in public places. Nevertheless, Judge Boris Bellow declared that conduct which might be innocent and harmless for the general population can cause actual harm when child sex offenders engage in it. Judge Boris specifically cited using photography as a guise for grooming potential victims. But not only is that link precisely the type of tenuous potential harm that courts have found to be insignificant or insufficient rather for restricting First Amendment protections, but the concern expressed by the judge using photography as a guise for grooming, which is his words, is actually prohibited as a separate offense. Laws exist that prescribe the harm imagined by the trial court such that it is not necessary to further restrict First Amendment protections. Indeed, the case at bar involves a surreptitious photograph, which was neither pornographic nor obscene and involved no contact with the child at all. The judge even remarked that he found it, quote, strange that a defendant would take the pictures here and ask counsel why, quote, his client takes those photos. In fact, the judge characterized the issue as use of a photograph for a lewd or pornographic purpose, which is only. Which is not only is not the offense charge here, but it suggests that he sought to punish thought crime that reviewing courts have consistently rejected. In Ashcroft, the Supreme Court held that government may not prohibit speech because it increases the chance an unlawful act will be committed at some indefinite future time. And that photographs were neither obscene nor pornographic could not be prescribed simply because they might whet the appetites of pedophiles and encourage them to engage in illegal conduct. As such, the statute here is constitutionally impermissible and Mr. Rollins respectfully requests that this court vacate his conviction and sentence and invalidate the statute. Thank you. Thank you. Are there any questions from Justice Hudson? Yes, I do have a few. Good morning, Mr. White. Morning. Mr. White, obviously, would you agree that the determinative factors to what level of scrutiny applies depends on whether it's content neutral? I think particularly here, yes, I think this certainly is content neutral, but yes. Okay. There's no indication here that section 1124 is motivated by a desire to suppress ordinary pictures of children, is there? Ordinary pictures of children? I think that's precisely what it prohibits. People can't take pictures of their children anymore? Of their own children. I misunderstood. Children in general, of their own children. No, that's correct. There's no intent to suppress photographs of minor children, generally speaking, is that correct? Other than their own, correct. So the subject of the content, why isn't that content neutral? The legislature appears to be concerned about how the picture was acquired, who acquired it, and for what purpose. The fact that a child is in the picture, it's not generally prohibiting that, so I don't understand why this is not content neutral in that subject of intermediary scrutiny. Intermediate scrutiny. Well, it's not content neutral because that picture is serving as the basis for the defendant's conviction, and if the son were not in this particular picture, it wouldn't be. It's the presence of the underage child in this case that makes that picture prescribed. No, it's the presence of who's taking the picture and under what circumstances, isn't it? Well, right, but it's a picture, it's not, it's, right, the picture that is taken of a child. It's not illegal per se. The photo itself. Right. Is illegal to the photographer if the photographer has been previously adjudicated a sex offender. The photographer is not allowed, the defendant is not allowed. Go ahead, finish your thought. That was it. I'm curious, how do you distinguish this case and the arguments the state is making from the Supreme Court's decision in Austin? I mean, the Supreme Court in Austin upheld the so-called revenge porn statute, and they held that they were concerned about the manner of the regulation, things of that nature that we're talking about. I mean, somebody could send a picture out with consent and it wouldn't be illegal, but if you acquire it and send it out in a manner that violates the statute, it would be illegal. So why doesn't the rationale in Austin apply here in this case? Well, because there they found that the harm in Austin was the conduct of distribution, it wasn't the taking of the photograph per se. They found actual harm with the photograph's distribution. Well, why couldn't the legislature determine it would be harmful for a child sex offender to surreptitiously obtain a photograph without the consent of the parent? Why is that so much different than Austin? Because there is no inherent harm to that. The harm that the court below, in fact, seemed to be concerned about was not the harm of there being an actual photograph, but the harm that there would be possibly contact with the minor, or that it would be used in some way to lure the minor. Things that we have criminal statutes for now, the actual photograph taken of the minor, although creepy, I don't think anybody's denying that. But whether or not that can be restricted by the First Amendment simply because we don't like what that sex offender might be thinking, I don't think meets the test. Whereby Austin was the actual act of distributing this, which actually did cause at least arguable harm to the victim in those cases. Mr. White, let me ask you a very basic question. Is there any concern or issue about whether or not a photograph in and of itself constitutes free speech? I don't think there's any issue to that as long as it's non-pornographic and non-obscene. Okay, that's all I have. Thank you. Justice Brennan, do you have any questions? I do. I would like to follow up on Justice Hudson's last question. Because I'm concerned that everybody missed what I'll call, just for discussion purposes, a threshold question. Whether this photograph, if you will, is speech in the first place. And there's no question that photographs, videos, and certain contexts can be speech. My question is, are they always speech? And what I have in mind is this. I believe that it's been established that in order to be protected under the First Amendment, images have to communicate some idea. My question to you is, first of all, do you agree with that principle? And secondly, if you do, what idea was this photograph communicating, or was it purely for recreational purposes? I do agree with the general proposition that photographs, non-obscene photographs, obviously, not pornographic photographs, are protected by the First Amendment. They must convey an idea, perhaps. I think that's a very slippery slope trying to determine what's in the creator's head. I think the cases have generally disfavored that sort of approach. The problem here is this actually was disseminated. It was disseminated on a message board. I don't know what the idea is. I'm probably the last person to ask questions about the importance of a particular photograph or its meaning or what the artist is trying to convey. But it was something that was conveyed to a message board that is not obscene again. I mean, that would be a clearly different situation, of course, if it were. But a non-obscene photograph taken in public that was posted to a message board, I don't know what the intent of that was. But it certainly was intended by the creator, by the defendant here, to express something. So, if the defendant took a picture of a rock and posted it on a message board, the mere fact that it's posted, your position would be that it makes it somehow communicative in nature. Well, if that rock is Plymouth rock, if that defendant is taking pictures of a rock and he's posting it for some reason, I don't know necessarily what that message is. But I think that's the slippery slope, the consideration of whetting the appetites, as they say, the thought crime that exists. The point, though, here is that a photograph of a rock, if he's posted, it's posted for a reason. I mean, there are plenty of artistic works that are posted that I think a lot of us might say, I don't understand what this person is trying to convey, if anything. But there's, you know, billion-dollar industries based on that. So, I don't think it's the position of the court in that type of situation to determine what's in the producer's head in those types of situations. In Hurley v. Irish American Gay and Lesbian case, they said something to the effect of, to achieve protection under the First Amendment, a plaintiff must show that he possessed a message to be communicated, an audience to receive the message, regardless of the medium in which the message is to be expressed. And I just would like someone to articulate for me what the message was in photographing the child in this case. Was it purely for recreational purposes, or did it have some other purpose? What was the message? I have no idea. I don't know that anyone other than the artist would know that. Isn't it your burden to establish that a message, that the photograph was intended as a message to be communicated? Well, it was intended as a message to be communicated because it was posted on a website. So, he did, in fact, communicate it. The question here is what is that message? Not necessarily the posting, but what was the message? Well, it was, maybe I'm arguing the same thing, but the message, I'm saying we don't know what the message is necessarily, but there's evidence to suggest that the defendant considered a message or had a message inherent within that because he did post it. All right. All right. Thank you. I have a question or two. I have discussed this with Justice Hudson, and we concurred with Justice Brennan's suggestion that there be supplemental briefing on this point that Justice Brennan discussed regarding whether or not the photograph in question was, in fact, an exercise in speech or was otherwise protected under the First Amendment, which if it isn't appropriate communication, then it's a threshold issue that may dispose of the case. And so, we as a court are ordering the parties to file supplemental briefing on this point. The appellant's lawyer, Mr. White, has 10 days, and Mr. Friedland has five days to respond, and Mr. White has five days to respond or to reply to the response. Relative to questions, I don't really have any further questions. I think the other panelists covered my issues, and therefore, I will not be redundant. Thank you, Mr. White. You'll have an opportunity to make rebuttal. Thank you. Mr. Friedland, you may proceed. Thank you. Good morning. My name is David Friedland. I represent the Eppley people of the state of Illinois. As I've set forth in my brief, I think that the Supreme Court stated that it's assumed that First Amendment permits a state to exact specific, narrowly tailored laws to prohibit a sex offender from engaging in conduct often presaging a sexual crime, like contacting a minor or using a website to gather information about a minor. And specific laws of that type must be the state's first resort to ward off the serious harm that sexual crimes inflict. And I believe it's with this purpose in mind that the legislature enacted the statute at Issue 1124, which seeks to prohibit those convicted of child sex offenses from knowingly photographing a minor without parental consent. And in this case, the statute fulfilled its intended purpose. Briefly, I'd like to address the standard of review. And I believe under People v. Austin, which came out subsequent to Oakman, as well as North Carolina v. Packingham and People v. Minnis, it's clear that this court should apply intermediate scrutiny in its review of the statute. In Austin, the Illinois Supreme Court noted that a regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages, but not others. In this case, the statute's regulatory purpose, seeking to protect children from recidivist child sex offenders, is unrelated to the content of the photos. While Austin regulated the manner that one can disseminate another private sexual images, here the statute regulates the manner with which a convicted child sex offender may photograph images of children. In both cases, the regulatory purpose of the statutes was unrelated to the actual content in the photo, and therefore the statute is content neutral and should be subject to intermediate scrutiny. Getting to the question that the purpose of the statute that sought to address the threat of recidivism posed by those previously convicted of child sex offenses serves a significant or compelling state interest, which has been recognized in multiple court cases. The issue here is whether, setting aside the threshold issue as your honors pointed out, is also that the statute does not burden substantially more speech than is necessary to further the interest, and the answer is does not. I would point out that in Oatman, just directing my comments to your honors questioning, Oatman did note that in reviewing Oatman yesterday, or in advance of argument, that the statute does, this sort of statute appears to be a conduct-related restriction rather than a speech-related restriction, so I do take your honors points. I would note that the Illinois statute here does not limit a child sex offender's ability to photograph a minor, and therefore it burdens no speech. It minimizes or imposes a minimal time and place and manner restriction on how such individuals may engage in an activity. Thus, the impact is limited to only certain situations where there is either consensus in practical or where a parent does not consent. I believe that the section is narrowly tailored to criminalize no more than the knowing photography of children without parental consent by individuals with an indisputable history of sexually victimizing children, and therefore we'd ask you to reject the constitutional challenge. I'm now open to questions. Are you done? Yes. Thank you. Justice Hudson, do you have any questions? Yes, Mr. Friedland, perhaps you covered it in passing, but as you know, Mr. White relies heavily on the court's decision in Wisconsin, or from Wisconsin, in the Oatman case. How do you distinguish the statute here from the statute that was struck down in Oatman? There are three distinguishing factors that I identified in my brief, or three distinguishing items. The first is that it's more narrow. The language in the statute here is more capable of a more narrow interpretation. The language of a child that can be read and can be construed that the child would be the subject of the photograph, whereas in Oatman it had much more broad language that it was any representation of a child, and that language is much more broad. Secondly, that the statute here, the issue in Oatman, or one of the issues in Oatman, was that the statute there applied to all sex offenders, regardless if there was any evidence or any connection to a crime or offense involving children. Here, this statute has removed that concern by limiting it only to those individuals who've been previously convicted of sex offenses against children. And finally, the consent provision here essentially removes any burden to the extent that the photograph is considered speech or expression, protected expression. The consent provision removes all burden to this speech by allowing these offenders or these individuals to engage in this conduct without disclosing, minimizing the chilling effect by preventing any disclosure of their status as a sex offender. Also, is it your position that the Supreme Court's decision in Austin, in the Austin decision that you alluded to earlier, controls the results here? How does Austin apply here? I believe that Austin, which was decided after Oatman, does control here. If you simply replace the content and the analysis of the purely private sexual images in Oatman, the goal of that statute was to regulate the manner in which those images were disseminated, and you replace it with the child photographs subject. In this case, the statute does the exact same thing, seeks to manner their, I'm sorry, seeks to regulate the manner in which people, this class of people, obtain or take those photographs. So it's not actually regulating the content. And so I do think Austin applies. All right, that's all I have. Thank you, Mr. Freeland. Thank you. Justice Brennan, do you have any questions? Briefly. Mr. Freeland, in Austin, wasn't one of the primary concerns of the court, the expectation of privacy that the subject of the videos or photos expected? Yes. We don't have that concern in this particular case, do we? We don't have that, but we do have the purpose behind the statute in regulating the manner of which the images are obtained is just different. We don't have the same concern, but we do have a similar regulatory purpose underpinning the statute. Very well. And then following up on the request for additional briefing, if both parties could write this down. One of the cases that we would like you to look at in terms of understanding the issue you've raised is 825 Ed Supp 2nd 965. Larson versus the Fort Wayne Police Department. I have no additional questions. Thank you. Mr. Freeland. Minors have an interest in their own privacy. I would answer that they do. Is there a friction or a conflict between a minor's right to privacy versus this statute? I don't believe there is because the minors the minors. Do you mean that the fact that the minors can't control their own privacy because it sets it allows their parents to consent to their someone else taking their photograph. I will flip the question. Does this statute aid in a bet the protection of a child or a minor's privacy interest. I believe that it does you now and there is no better example of the minors privacy interest than exactly what happened in this case that the defendant took a surreptitious picture of the minor and posted on a website. And then with descriptions of how he viewed the minor. I undoubtedly as I've indicated in my brief that the parents have a right to know who their children visit who with individuals with whom they speak to monitor and have a responsibility to keep them safe. This statute furthers both the minor and the parents right of privacy to prevent their photos from being used either used in grooming or used on a posted on a surreptitious website. And not only to and and further the parent the goal that of aiding and responsibility of parents and safely upbringing their children. I have no further questions. Thank you. Does the panel have any further questions. I don't have Mr. Friedland. No, I do just briefly. Mr. Friedland the statute here does not require dissemination though. It's the mere taking of the photograph. That is the crime in this context. Correct. Yes, I referenced the dissemination as part of the under the underlying purpose and enacting the statute. All right. Thank you. Thank you. I have no additional questions justice. I have no further questions Hudson. Do you have any other questions. Thank you. Mr. White, you may proceed with your rebuttal. Thank you to follow up on Justice Brennan's point. I think that is a significant consideration that expectation of privacy is not an issue here. Of course, parents have an interest in the substantial interest. And so does the state to some extent in their children's meeting with people being contacted by people. But again, that is not what this is. It's not the same concern as the other statute, but it's the same regulatory purpose. And that's significant. Of course, it's the same regulatory purpose. It's the protection of children. But even under the intermediate standard, it's it's still that nexus is lacking between the taking of a photo and the harm to children or potential harm to children. In fact, I think this was cited by both parties in different ways. But the prime example here would be a picture of a group of children in front of a bean or any place else. Any sort of public image that captures a picture of a child is going to be at least arguably or at least can be prosecuted. I know there's there's been some limitation in the language of the statute here, as opposed to open, which says that it of a child which can be read, as the state says, but that doesn't mean it has to be read. And I think that it also reflects a sort of naivete about modern photography. This statute may have better accomplished its stated purpose 20 years ago when you had, you know, perhaps someone is going to be trolling with their camera and, you know, attempting to get a picture. But now you've got everyone from, you know, third grade on has a phone that is capable of taking professional quality pictures. They can take a picture of a large group. They can zero in on a member of that group and large it. You know, the taking of the photo itself, you can take a group photo that's going to contain many people. And one of those people is a child is going to leave the defendant open to prosecution. The focus still seems to be in the state's argument, the conduct of taking a photo. Don't approach children. Don't go near children. Don't attempt to contact them on websites. But that's not what this does. This is simply taking a photo, whether the child doesn't knows about it, which in this case didn't or not. And there's not a privacy interest of an individual in a public place, which was the situation here. No one else would be prosecuted for taking this photograph. So that's why we are asking that you find the statute unconstitutional and reverse Mr. Rollins conviction. And I have nothing further questions. Thank you, Justice Hudson. Do you have any questions? I have no additional questions. Justice Brennan. I have no additional questions. I have a question or two. If this individual were to take this picture on his smartphone and he didn't send it out or disseminate it, publish it, send it to the cloud or whatever, how would the state find out about this crime? Unless somebody knew that this individual was a convicted felon who had a propensity towards pedophilia. It could be turned in by someone who knows them. He could be open to force by, you know, blackmail might be a little extreme. But, you know, it's a situation where I know you're not supposed to be taking this. We see this all the time in the context of computers and spouses, girlfriends, boyfriends, et cetera, you know, sort of saying, hey, there's some stuff on this computer that shouldn't be and call the police. In fact, with the current picture, there's a good question as to the records a little unclear about how exactly anyone knew of this because the picture itself is rather innocuous. So I'm not sure that we can really read too much into how, you know, it may be because he's making, you know, he's making himself obvious, in which case there's a crime for that. But, you know, if he's causing a public incident and taking this photo in his with a smartphone, then certainly that's going to be conduct that's punishable by some other offense, but not the actual taking of photo itself. What do you think the defendant meant by Airsoft Angel? I have no idea, but I do know that that is seems to be it would seem to be for the general. I know what Airsoft is and I know what Angel is, but again, I'm not interpreting his, you know, his his intent here, his what's in his mind. But I do know that it was a non obscene, non pornographic picture. And to read too much more into that is to, you know, what the you know, because it wets the appetites potentially of pedophiles. And that's precisely what the road that the Supreme Court said that we couldn't go down. So. I mean, it's certainly creepy. I don't think you get any argument there that, you know, what what is done here and that anyone, any nor any parent would be, you know, sort of probably offended and maybe shocked that there's photos. And I think not just not just parents. I think, you know, anyone who's had contact with the Internet has maybe been a little surprised to see just how much information about them is out there. You know, it's a little startling when you see, oh, you know, here's something that I didn't think anyone knew or, you know, relatives or whatever. If you Google yourself online, that kind of thing. So I don't think there is a protected interest in that. Certainly one that overcomes the First Amendment. OK, thank you. I have no further questions. Justice Hudson. I have no additional questions. Thank you, Justice Brennan. I do not either. Thank you. Thank you. We will take the case under advisement and there will be a order regarding supplemental brief brief being issued sometime today. Thank you. Mr. Clerk, we terminate the proceedings.